# PROVIDENCE COUNTY.

STATE *vs.* DENNIS MURPHY.

On the trial of an indictment for murder, two statements made by the deceased describing his assailant were admitted in evidence. One was made just after the murderous assault to a man who came at the victim's call. One was made ten or fifteen minutes later to a friend who was summoned at the victim's request.

*Held*, that the statements were properly received in evidence.

The admissibility of such statements is controlled, not by the fact of intervening time, but by the real and illustrative connection between them and the act committed Of this connection the intervening time is a factor. Declarations shown by common experience to be the instinctive result from an act are part of the act, even if made five or fifteen minutes after the act.

EXCEPTIONS to the Court of Common Pleas

The questions raised are stated in the opinion of the court.

*Horatio Rogers*, Attorney General, for plaintiff.

The statements of the deceased to witnesses Sweet and Osgood were properly admissible as part of the *res gestae*. *Commonwealth* v. *M'Pike*, 3 Cushing, 181 ; *Rex* v. *Foster*, 6 C. & P. 325 ; *Regina* v. *Lunny*, 6 Cox C. C. 477 ; *Thompson et ux.* v. *Trevanion*, Skin. 402. See reference to same case in note to *Rex* v. *Foster*, 6 C. & P. 325, 326 ; *Brownell* v. *Pacific R. R. Co.* 47 Mo. 239 ; *Harriman* v. *Stowe*, 57 Mo. 93 ; *Insurance Co.* v. *Mosley*, 8 Wall. 397.

But it is needless to multiply citations, since the ruling of Lord Chief Justice Cockburn, in *Bedingfield's Case*, tried in the autumn of 1879, has elicited thorough discussions of the whole subject of the law upon declarations as part of the *res gestae*, both in civil and criminal cases. The attention of the court is asked to three articles by Professor James B. Thayer, of Cambridge, in the Law Review for December, 1880, and January and February, 1881, vol. 14, page 817, and vol. 15, pages 1 and 71, entitled " Bedingfield's Case. Declarations as a part of the *res gestae*," and also to three articles in the Albany Law Journal, vol. 21, pages 484 and 504, and vol. 22, page 4, entitled " Declarations as *res gestae* in criminal cases," issues of June 19, June 26, and July 3, 1880.

*George J. West*, for defendant.

The statements of the deceased to Sweet and Osgood were inadmissible as evidence. *People* v. *Davis*, 56 N. Y. 95 ; *Eighmy* v. *The People*, 79 N. Y. 546 ; *Greenfield* v. *The People*, 85 N. Y. 75, 89 ; *Waldele* v. *N. Y. C. & H. R. R. R. Co.* 95 N. Y. 274, 282 ; *Armil* v. *Chicago, Bur. & Q. R. R. Co.* 70 Iowa, 130 ; *Riggs* v. *State*, 6 Cold. 517 ; *Regina* v. *Bedingfield*, 14 Cox C. C. 341 ; *People* v. *Ah Lee*, 90 Cal. 85 ; *State* v. *Pomeroy*, 25 Kans. 349 ; *People* v. *Ehring*, 65 Cal. 135.

That portion of Irons' statement relating to the previous coming in of his assailant some days previous and making purchases, while of vital importance to the defendant as to his identification subsequently, under no circumstances could be a part of the *res gestae.*

The case of *Insurance Co.* v. *Mosley*, 8 Wall. 397, is criticised in 56 N. Y. 102, and in 95 N. Y. 282. Likewise *Commonwealth* v. *M'Pike* is not fully sustained by *Lund & Wife* v. *Inhabitants of Tynsborough*, 9 Cush. 36, and *Commonwealth* v. *Hackett*, 2 Allen, 136, and has been vigorously attacked by Lord Cockburn. See 60 Cal. 85.

Some law writers hold that there is no difference in the law applying to " *res gestae* " in civil and criminal cases. The defendant submits that there is a substantial difference. Our Constitution provides that the defendant in a criminal cause shall be confronted with the witnesses against him. The " *res gestae*," so far as it consists of the declarations of the deceased, should be confined in criminal causes to what was said against the defendant in his presence. There is no cross examination, no belief of impending death. The evidence is hearsay at best.

*June* 17, 1889. STINESS, J. The bill of exceptions shows that, upon the trial of an indictment for murder, two statements of the deceased were admitted in evidence, to the effect that he had been assaulted and robbed by two men whom he described. One of these statements was made immediately after the assault, and the other from ten to fifteen minutes later. When first seen by the witness Sweet, the deceased stood at the door of his shop, beckoning to Sweet, who was across the street, crying out, " Come over ; I want you right away." He then sank back into a chair,

weak and exhausted, his head bleeding, saying he had been robbed and about killed by two men, who had not been out of there half a minute. He asked Sweet to call assistance, naming Mr. Osgood, whose place was near by. Sweet talked with the deceased a few minutes, perhaps six or eight, then went for Osgood, returning with him three or four minutes afterwards, when the deceased made a similar statement to Osgood.

These statements were admitted, against the defendant's objection, as a part of the *res gestae.* The question is, was the admission of this testimony erroneous?

The admissibility of this kind of testimony has been much discussed, but it is now settled beyond question that, to some extent at least, statements immediately following and connected with a transaction, which otherwise would be mere hearsay, are admissible as a part of the transaction itself. The principle upon which the admission of such evidence rests is, that declarations after an act may, nevertheless, spring so naturally and involuntarily from the thing done as to reveal its character, and thus belong to it and be a part of it; also to rebut all inference of calculation in making the declarations, and thus to entitle them to credit and weight as evidence of the transaction itself. So numerous have been the adjudications upon this point that the difficulty does not now lie in ascertaining whether testimony of this kind is admissible, but in determining to what extent and under what circumstances it is admissible.

The most notable case in limiting its scope is *Regina* v. *Bedingfield,* 14 Cox Crim. Law Cases, 342, in which Cockburn, C. J., excluded all testimony of declarations after the act done. This ruling was much criticised, and led to a vigorous discussion of the subject in public prints, in the course of which the Lord Chief Justice issued a pamphlet in defence of his ruling. An extended quotation from this pamphlet is given in *People* v. *Ah Lee,* 60 Cal. 85, which we take to be accurate. In the words quoted, the Chief Justice so far qualifies what appears to be the doctrine of the case as to concede the admissibility of statements by the deceased after the act done, while he is fleeing under the apprehension of danger, and asking for assistance and protection, even though they be made in the absence of the accused. He styles

such flight and appeal the "constructively continuing" act of the wrongdoer, and hence a part of the *res gestae*. Without stopping to examine the nicety of the discrimination here made, it is enough to note that, even in the opinion of Lord Cockburn, who is considered to have taken extreme ground, statements made by the deceased are not necessarily confined to the time covered by the actual doing of the act. Cases allowing a wider range of testimony are numerous, and many of them are referred to in Wharton on Crimial Evidence, 8th ed. § 263, notes 1 and 4; also in articles by Prof. James B. Thayer, one entitled "Bedingfield's Case," Amer. Law Review, vol. 14, p. 817, and vol. 15, pp. 1 and 71; also one entitled "Declarations as *Res Gestae* in Criminal Cases," Albany Law Journal, vol. 21, pp. 484 and 504; vol. 22, p. 4. See, also, *Dismukes* v. *The State*, 83 Ala. 287; *State* v. *Driscoll*, 72 Iowa, 583; *State* v. *Schmidt*, 73 Iowa, 469; *Kirby* v. *Commonwealth*, 77 Va. 681; *Louisville Co.* v. *Buck*, Ind. 19 N. E. Reporter, 453.

The rule deducible from these cases is well expressed by Bigelow, C. J., in *Commonwealth* v. *Hackett*, 2 Allen, 136, 139: "The true test of the competency of the evidence is not, as was urged by the counsel for the defendant, that it was made after the act was done, and in the absence of the defendant. These are important circumstances, entitled to great weight, and, if they stood alone, quite decisive. But they are outweighed by the other facts in proof, from which it appears that they were uttered after the lapse of so brief an interval, and in such connection with the principal transaction, as to form a legitimate part of it, and to receive credit and support as one of the circumstances which accompanied and illustrated the main fact, which was the subject of inquiry before the jury."

Applying this rule to the case before us, we think the testimony of the first conversation was properly admitted. The deceased went to the door of his shop and called for assistance immediately after the assault. There was apparently no time to concoct a story against the defendant; indeed, he did not know who had assaulted him. From natural impulse, he immediately appeals for assistance and describes his condition, thus revealing the character of the act done. It was not an accident; not a self-inflicted injury, but an

assault. Unlike a wound from stab or shot, his condition did not reveal its cause, but gave credit to his immediate natural and unpremeditated statement, and threw light upon the character of the act done. The statement has all the recognized characteristic marks of admissibility, and we think it is within the authority of conservative cases upon this point.

The admissibility of the second statement is not so clear, but yet we think it is so connected with the first that it should be governed by the same rule. It was later in time by several minutes, but we do not think this is decisive, since the controlling element of admissibility is not the interval of time, but the real and illustrative connection with the thing done, in which the interval of time is a factor. In the first conversation he asked for Osgood, who was his neighbor, and the one upon whom he relied for assistance. As soon as Osgood could be brought, he was by the side of the deceased. He found him bent over and complaining; but the nature, cause, and extent of his injuries were not apparent. The deceased then stated to Osgood what had taken place, whereupon the latter ran out to notify the police. In view of the condition of the deceased; of the fact that Osgood was the one in his mind from whom he expected help; of the call for Osgood, as soon as he could make it, to the first witness, and of his explanation of his condition to his friend and neighbor upon his arrival; we see no radical difference between the statement so made and the first one. Indeed, except in point of time, it is the same as though it had been made to him at the time of the first call. The common marks of impulsiveness, of connection with and illustration of the main transaction, entitle both statements to similar credit and support. If, as established by principle and authority, the first statement is admissible, the second is not essentially different. If the deceased would naturally and almost necessarily declare his condition and its cause to a stranger hailed in the emergency, with equal if not greater reason would he declare it to the friend he calls for, who so soon after finds him in the place where he was assaulted, weak, bleeding, and helpless. The deceased was an old man, terribly injured internally; several ribs were broken; the intestines were ruptured, and he was so bruised in the chest and abdomen as to cause extravasation of blood.

Under the shock of such injuries, from which he died a few hours after, it is impossible to believe that he could have invented a story against the defendant. His condition precluded it. On the contrary, as the acts of men are judged from common knowledge and experience, the statement commends itself as the instinctive utterance of a man in extremity, which not only discloses his condition but is compelled by it. That which is recognized by such common experience as the instinctive outcome of an act is, for this reason, deemed to be a part of it, whether the time of the expression be five or fifteen minutes after. Words and acts, in this respect, stand upon the same footing; and the latter go without challenge.

The defendant further contends that the admission of this evidence violates his constitutional right to be confronted by his witnesses. But this is not so. The deceased is not the witness ; nor are his statements, merely as statements, reproduced in evidence. What he said and did in natural consequence of the principal transaction becomes original evidence, concerning which the witnesses are produced. This point is fully covered in *State* v. *Waldron, ante,* p. 191.

Reference is made in the defendant's brief to statements made concerning matters which happened before the assault, but we find no such exception in the record.

*Exceptions overruled.*