360 A.2d 867.

STATE *vs.* JOSEPH R. MEDEIROS.

AUGUST 6, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is an indictment charging the defendant Joseph R. Medeiros with the murder of Jose E. Pinheiro in violation of G. L. 1956 (1969 Reenactment) §11-23-1. The case was tried to a Superior Court justice sitting with a jury which returned a verdict of guilty of murder in the second degree. Following denial of the defendant's motion for a new trial, a judgment of conviction was entered imposing a sentence of 15 years at the Adult Correctional Institutions. From that judgment the defendant prosecutes his appeal to this court.

The record indicates that on May 5, 1974, defendant and the victim had spent the greater part of the evening playing pool and drinking at a social club in East Provi-

dence. At closing time they left the club together, and defendant testified that he was feeling dizzy from an unaccustomed mixture of beer, wine and whiskey. The victim, who was a friend of defendant's father, indicated he desired to trade cars with defendant. The defendant initially had no interest in trading, but finally followed the victim to his home for the purpose of making the trade.

At approximately 2:40 a.m., they arrived at Pinheiro's home where an argument broke out between defendant and Pinheiro who accused Medeiros of trying to back out of the deal to trade cars. At this time, defendant testified that he was feeling sick and wanted to vomit. According to defendant and Mrs. Pinheiro, who by that time had come to the door of the victim's home, Pinheiro had pulled Medeiros out of the car and the pair were scuffling on the lawn. Mrs. Pinheiro testified that she heard defendant say, "I got a gun, I'm going to kill you." She later testified there was no gun. Mrs. Pinheiro finally separated the pair and was leading her husband into the house with defendant following them attempting to apologize. After the victim and his wife entered their home, defendant returned to his car and blew the horn several times so that, according to defendant, Pinheiro would not have hard feelings against him.

According to Mrs. Pinheiro and a neighbor, Carleton G. Skinner, Jr., who testified, defendant turned his lights and motor on before he blew the horn. Mrs. Pinheiro testified that her husband, upon hearing the horn, opened the door, left the house and then walked in front of defendant's car holding his hand on the hood. She testified that defendant gave the car the gas and she saw her husband slide underneath the car. She ran back into the house to call for help and then she heard a bump and saw defendant's car speed away.

The defendant testified he did not put on the car lights

until after Pinheiro had come out of the house and again started to argue. He stated that the victim grabbed him by the hair and began to berate him. The defendant said he freed himself, rolled up the car window, turned on the lights and started the car. Medeiros stated that Pinheiro was standing near the front fender and facing toward the front of the car. The defendant claimed he then turned his head to look back thinking he had the car in reverse, but instead he had mistakenly put the car in drive and when he gave it the gas the car shot forward and he heard a "boomp." He then stopped the car, opened the door and saw Pinheiro under the car. According to defendant, he panicked, put the car in reverse and backed the car off Pinheiro. He claimed he did not realize Pinheiro was dead and he sped away in the car. The defendant testified he spent the remainder of the night with a friend and in the morning went to his sister's apartment hoping to learn from her where his father was in order to tell him about the accident and ask for his help. The police arrived to arrest him just as he was about to leave to go to see his father. He had at that time left his sister's apartment after observing the police arrive and had gone to another apartment in the basement of the building. It was then that he made the remark which is the basis of the appeal.

Detective Augustine C. Pimental testified that he called Medeiros by name and asked him to open the apartment door and Medeiros did so.

At trial, the following exchange took place between defense counsel and Detective Pimental:

"Q And when he opened the door, did you say anything further to him?

"A I didn't have to say anything. He came right out and told me that he didn't mean it."

At this point the state objected and moved to strike. The court sustained the objection stating:

"The answer has been made and it's obviously hearsay and it's self-serving, and the motion to strike is granted and the jury will disregard the answer."

The defense counsel then made the following offer of proof:

"If the court please, if this [witness] were allowed to answer the question which was posed to him, he would indicate that this defendant indicated to him immediately upon his apprehension that he did not mean to do what he did, insofar as the death of Mr. Pinheiro is concerned, that it was an accident, and that this police officer continually told him that he need not say anything and don't say anything until you give me a chance to apprise you of your constitutional rights, and this defendant indicated to him that he was not interested in his constitutional rights and he indicated that the event which occurred on the evning before in the early morning hours of May 5, 1974 was an accident. That is basically what he'd say, your Honor, and I feel as though this should be brought to the light of this jury for at least two reasons. The first one, I think it could be categorized not as hearsay but more in the line of a spontaneous utterance, or, as we once knew it, part of the res gestae of this particular situation. It was only some eight or nine hours after the occurrence which took place. Secondly, the fact that the defense in this case is that this was in fact an accident, I think it is important for this jury to realize it has been this defendant's position since the event took place and not something that has just come up as a trial tactic."

To the offer of proof the court replied:

"All right. Let the record show that this offer of proof is being made out of the hearing of the jury. The offer of proof is rejected. It appears to the court that this is entirely a self-serving statement which does not qualify as a spontaneous exclamation and as an exception to the hearsay rule. The defendant's exception is noted."

The defense counsel then called Detective David B. Lamberton, the other arresting officer, and asked him what

defendant had said at the time of the arrest. The court sustained the state's objection and defense counsel made an offer of proof substantially the same as made in behalf of the admission of Detective Pimental's testimony. The court rejected the offer of proof citing the same reasons as those given in rejecting the offer of proof made in behalf of Detective Pimental's testimony.

The defendant now claims the trial justice committed reversible error, that the statement made to the arresting police officers should have been admitted under the spontaneous utterance exception to the hearsay rule. The defendant points out that this court in a series of cases has held that a spontaneous utterance is an exception to the hearsay rule. He points to *State* v. *Nordstrom,* 104 R. I. 471, 244 A.2d 837 (1968), wherein this court stated that:

> "The crucial question is whether from a consideration of all the facts the trial justice is satisfied the declarant was still laboring under the stress of the nervous excitement when, as in this case, she spoke."

The defendant argues that the trial justice made absolutely no attempt to determine whether defendant's statements to the officers were made "under the stress of nervous excitement," but instead merely concluded that the statements were self-serving and clearly hearsay. Later after hearing defendant's offer of proof, he repeated his finding that the statements were self-serving and could not qualify as spontaneous declarations.

It is conceded by defendant that the admissibility of statements under the spontaneous declaration exception to the hearsay rule rests in the sound discretion of the trial justice. *State* v. *Nordstrom, supra.* The defendant claims, however, that the trial justice abused his discretion by failing to make a finding regarding spontaneity.

The question to be decided is whether defendant was laboring under the stress of nervous excitement when he spoke. Although this court has stated that it does not de-

mand strict contemporaneity in considering whether or not a statement may qualify as a spontaneous utterance, no such exception will be allowed where the statement is the product of reflection and deliberation. *State* v. *Carraturo,* 112 R. I. 179, 308 A.2d 828 (1973).

Here, the statement was not temporally proximate to the crime but was made approximately eight hours after the event. There is no evidence in the record that he was still laboring under the stress of nervous excitement engendered by the event of some eight hours previously. The defendant obviously had time to reflect and consider a story to be given not only to his father but also to the authorities when apprehended, and it is probable that whatever stress he was laboring under was engendered more by a realization of his predicament than by the continuing effect of the excitement caused by the incident. Additionally, by his own testimony, he was on his way to see his father to enlist his aid and must have, after deliberation, formulated an account of the incident to give to his father.

On all the evidence it does not appear to us that the defendant when he spoke was still laboring under the stress and excitement of the incident, but rather was the product of reflection and deliberation. We cannot say that the trial justice abused his discretion in ruling that the excluded statement was self-serving, and did not qualify as a spontaneous declaration exception to the hearsay rule. He therefore properly excluded the statement.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

Motion to reargue denied.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Joseph L. DeCaporale,* Asst. Public Defender, for defendant.