### In re DANIEL.
### No. 80–22–Appeal.
Supreme Court of Rhode Island.
Feb. 4, 1983.

Dennis J. Roberts, II, Atty. Gen., John J. McMahon, Sp. Asst. Atty. Gen., for petitioner.

William F. Reilly, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, for respondent.

## OPINION

SHEA, Justice.

This is an appeal from an adjudication of delinquency by a justice of the Family Court. Daniel, a thirteen-year-old youth, was adjudicated guilty of committing an indecent assault upon a three-year old boy, and was ordered held at the training school until further order of the court. On appeal, Daniel claims that the only evidence linking him to the offense consisted of inadmissible hearsay. We agree.

Because the Family Court justice determined that the three-year-old victim was incompetent to testify, the evidence linking Daniel to the crime consisted of the testimony of the mother and a police officer. The mother stated that at approximately 5:55 p.m. on April 23, 1979, she left her home. Upon returning, she discovered that her little boy, who had been playing in the yard, was missing. She found him one street away carrying his jacket and crying. He had cuts and scrapes on his face, a bruise near his eye, and a bump on his forehead. She took him home to wash him and there discovered that the boy's underwear was wet and dirty and was on backwards. He had a very distinct red welt across his buttocks. His socks were inside out and his boots were filled with dirt and grass.

The mother called the police who brought her and the child to the hospital. There he was examined by a physician who discovered contusions within the boy's rectum and concluded that the anal canal had been penetrated by some object. Thereafter, the boy was admitted to the hospital.

Over continuous objections, the trial justice permitted the mother to testify about certain statements that her son had made to her both on the day of the assault and after he was released from the hospital.

She stated that after finding her son, he told her that a black boy named Tyrone had beaten him. In addition, Officer John Sperling was permitted to testify, over objection, that while at the hospital, in response to his questioning, the victim said that Tyrone had been in the park with him.

The trial justice also allowed the victim's mother and Detective Mather to identify a photograph of the respondent. On April 25, 1979, Mather brought a "mug book" containing several pages of pictures of juveniles to the victim's home. His mother and Mather testified that at first the boy paid no attention to the book. Later, on the second attempt, he looked through the book but did not identify anyone. Thereafter the boy and his mother left the house because he had requested that he be allowed to go to nursery school. Almost immediately upon leaving, the boy began to cry and said that he had seen the picture of the boy who hurt him. They then returned to their home where Mather showed him the mug book for a third time. The boy pointed to the last picture on the last page. It was a photograph of Daniel who lived in the victim's neighborhood and was known by the nickname "Tyrone." Other evidence presented established that there were two other boys named Tyrone in the neighborhood whose ages were seven and eight.

On cross-examination, the victim's mother testified that her little son had, prior to the photo identification, compared the boy who had assaulted him first to his brother, who was aged five, then to a grown man like his mother's boyfriend, and finally to his uncles who at that time were aged fifteen and sixteen.

Daniel raises several arguments on appeal. The dispositive issue, however, arises out of the admission into evidence of the photo identification of Daniel through the testimony of the victim's mother and Detective Mather. This issue is dispositive because there is no other evidence linking respondent to this crime.

The out-of-court identification of Daniel's photograph by the victim was the equivalent of an out-of-court statement offered by the state to prove the truth of the matter asserted. This testimony of the identification, given by third persons, was clearly hearsay and therefore inadmissible unless it qualifiesd under an exception-to-the-hearsay rule. The state argues this testimony is admissible under the spontaneous-utterance exception to the hearsay rule.

"The exception is premised on the assumption that the excitement of certain startling events stills the reflective facilities and removes their normal controls. A spontaneous utterance occurring at the time of the so-called startling event is thought to be a sincere, truthful response to the actual sensations and perceptions produced by the preceding external shock. 6 Wigmore, *Evidence* § 1747 at 195 (Chadbourn rev. ed. 1976)." *In re Kim,* R.I., 445 A.2d 295, 296 (1982) (quoting *State v. Jalette,* 119 R.I. 614, 619, 382 A.2d 526, 529 (1978)).

A statement that would otherwise be inadmissible hearsay may be admitted as a spontaneous utterance even though it was not actually made contemporaneously with the event. The declarant, however, must make the statement in response to the shocking or startling event while still laboring under the stress or excitement engendered by the experience. *State v. Jalette,* 119 R.I. 614, 619, 382 A.2d 526, 529 (1978). A spontaneous utterance is really an effusion. Being spontaneous, it is free from the elements of design, contrivance, and self-service which at times color testimony given from the witness stand. Consequently, the credibility of such statements is not dependent solely upon the veracity of the declarant. *State v. Jones,* 27 Or.App. 767, 775–76, 557 P.2d 264, 269 (1976) (quoting *State v. Hutchison,* 222 Or. 533, 537, 353 P.2d 1047, 1049 (1960)).

Admissibility of spontaneous utterances is addressed to the sound discretion of the trial justice. *State v. Medeiros,* 117 R.I. 33, 37, 360 A.2d 867, 870 (1976). It is the burden of the state to establish that the statement is spontaneous and was made

before the declarant had time to misrepresent the happening. Whether the statement was truly spontaneous or not will be decided after an evaluation of the circumstances that existed at the time it was made. *State v. Jalette,* 119 R.I. at 620, 382 A.2d at 530.

In this case, it does not appear to us that the state met its burden. The circumstances of the statement do not suggest an excited utterance. The crucial photograph identification occurred two days after the assault. During this period, the child was hospitalized and was questioned several times by his mother and the police regarding the identity of his assailant. Testimony also established that prior to the photo identification, the boy had been confused about the characteristics of his attacker, comparing him first to his five-year old brother, then to a grown man like his mother's boyfriend, and finally to his teenaged uncles. It is apparent that the young victim, despite his age, had ample time to reflect on the identity of his assailant and to respond to the pressures and suggestions he was exposed to in the days following the assault.

Furthermore, the conditions immediately preceding the identification do not support an excited-utterance exception to the hearsay rule. When the little boy looked at pages of pictures in a mug book on the first try, he was inattentive. On the second try, he looked at photographs but identified no one. Only on the third viewing did he identify Daniel. This is not the type of effusion or excitement which typically gives rise to a spontaneous utterance.

The fact that the young boy cried minutes before the photo identification does not, in and of itself, establish that the youngster was still laboring under the stress of the assault. In a very similar situation this court held that the child's tears preceding a declaration after a lapse of twenty-two hours following the sexual assault could be attributed to a variety of circumstances. *State v. Jalette,* 119 R.I. at 621, 382 A.2d at 530. So too, in this case we can only speculate what caused the boy's tears. In fact, the record does not establish that the victim was still crying or showing any other sign of emotional upset when he was examining the mug book the third time. We therefore find nothing effusive about the child's behavior during the photo identification.

For these reasons, we hold that the testimony of the mother and the police officer should have been excluded. There is no other evidence in the record which could establish the respondent's guilt. Therefore, the appeal is sustained, the adjudication of delinquency is reversed, and the papers of the case are remanded to the Family Court.