STATE

v.

Kathy A. ST. JEAN.

82–525–C.A.

Supreme Court of Rhode Island.

Dec. 20, 1983.

Dennis J. Roberts II, Atty. Gen., Margaret R. Levy, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, Chief Appellate Div., for defendant.

## OPINION

MURRAY, Justice.

The defendant, Kathy St. Jean (St. Jean), is before us on an appeal following the return of a guilty verdict against her by a Superior Court jury on the charge that she robbed her seventy-seven year old landlady, Mrs. Letitia Ainsworth (Mrs. Ainsworth), in violation of G.L.1956 (1981 Reenactment) § 11–39–1. The trial judge imposed a ten-year sentence, of which five years were suspended, and granted five years of probation to commence upon her release from prison.

On appeal, St. Jean raises two issues. First, she contends the trial justice erred by admitting the hearsay testimony of a Providence police officer. Second, defendant contends that even if the challenged statements are admissible under the excited utterance exception to the hearsay rule, their admission violated her constitutional right of confrontation. After a review of the facts, for the reasons stated below we affirm the trial court's decision that the statements were properly admitted.

On February 9, 1981, at approximately 4:30 p.m., Officer Vincent Mansolillo (Mansolillo) of the Providence police department responded to a call reporting a robbery at 23 Earl Street, Providence. Mr. Ryan, one of the four tenants in the building, had called in the report. Ryan was also concerned that he had not seen his landlady, Mrs. Ainsworth, during the day. He conveyed this concern to Mansolillo. Mansolillo knocked on Mrs. Ainsworth's door; he heard a "rustling" noise inside, but there was no answer. Mansolillo, fearing that the woman might be in danger, attempted to force open her apartment door. He was able to open the door as far as a security chain lock would permit. Mansolillo testified that inside he saw an elderly woman sitting on a couch. He identified himself as a police officer. The woman (Mrs. Ainsworth) then unlatched the chain and admitted Officer Mansolillo.

Mansolillo, over defendant's objection, then testified to the statements Mrs. Ainsworth had made to him. He testified that Mrs. Ainsworth had grabbed his arms and screamed out, "Kathy upstairs robbed me. They tied me up. She took my ring." He described Mrs. Ainsworth as "frightened" and "hysterical." The officer had noticed bruises on Mrs. Ainsworth's arms and wrists. He went on to describe the apartment as "being in total disarray." Mansolillo, again over timely objection, then testified about his ensuing conversation with Mrs. Ainsworth in her apartment.

The officer began to question Mrs. Ainsworth about what had happened. He described her state of mind during this questioning as very unsettled. Mansolillo was then permitted to give the following recitation of the content of the conversation. At about 1:30 p.m., earlier that day, defendant and a male companion entered Mrs. Ainsworth's apartment through an unlocked door. St. Jean then began a search of the bedroom. When Mrs. Ainsworth attempted to stop the search, the male companion grabbed her. This companion then pulled the telephone wires from the wall. The defendant and the male companion then tied Mrs. Ainsworth to a chair with the phone wire. The defendant demanded money. When Mrs. Ainsworth stated that she had none, the companion held her arms while defendant removed a gold ring from her right hand. They took twenty dollars from the apartment and told the victim not to answer the door. Mansolillo further testified that Mrs. Ainsworth told him that she had been able to free herself but had been too afraid to leave the apartment or to call the police.

Mrs. Ainsworth died prior to the trial. Her death was unrelated to the robbery. As far as the record discloses, she did not make a sworn statement before passing away.

The above testimony was offered into evidence as proof that defendant had in fact committed the robbery. Thus, "an out-of-court statement [was] offered by the

state to prove the truth of the matter asserted." *In re Daniel,* R.I., 456 A.2d 258, 260 (1983). Mansolillo's testimony contained hearsay statements and is "therefore inadmissible unless it qualified under an exception-to-the-hearsay rule." *Id.; State v. Poulin,* R.I., 415 A.2d 1307, 1309 (1980). The state argues that this testimony is admissible under the "spontaneous utterance" exception. We have long-recognized this exception to the bar against the use of hearsay evidence. *See State v. Nordstrom,* 104 R.I. 471, 475, 244 A.2d 837, 840 (1968).

"The exception is premised on the assumption that the excitement of certain startling events stills the reflective facilities and removes their normal controls. A spontaneous utterance occurring at the time of the so-called startling event is thought to be a sincere, truthful response to the actual sensations and perceptions produced by the preceding external shock. 6 Wigmore, *Evidence,* § 1747 at 195 (Chadbourne rev. ed. 1976)." *In re Daniel,* R.I., 456 A.2d at 260 (quoting *In re Kim,* R.I., 445 A.2d 295, 296 (1982) quoting *State v. Jalette,* 119 R.I. 614, 619, 382 A.2d 526, 529 (1978)).

■ On appeal, defendant does not challenge the trial court's implicit finding that Mrs. Ainsworth made the admitted statements about a "startling or shocking event." *See State v. Poulin,* R.I., 415 A.2d at 1311. Indeed, this issue was not raised at trial. As the trial justice admitted the evidence under the excited utterance exception, the statement must be made in response to an exciting event. After a review of the facts, we do not find this holding to constitute an abuse of discretion. Accordingly, we now move on to review whether the statements were made under the stress of nervous excitement. *State v. Nordstrom,* 104 R.I. at 476–77, 244 A.2d at 840.

■ The utterance need not be strictly contemporaneous with the startling event to qualify as spontaneous. *State v. Creighton,* R.I., 462 A.2d 980, 983 (1983); *State v. Carraturo,* 112 R.I. 179, 184, 308 A.2d 828, 831 (1973). The guarantee of trustworthiness is assured as long as the declarant made the statement as an "instinctive outpouring" or as an "effusion." *State v. Creighton* and *In re Daniel,* both *supra.* We have continually stressed that a statement made in response to a traumatic or startling event is a spontaneous utterance so long as it was made while the declarant "was still laboring under the stress of [the] * * * experience." *State v. Creighton,* R.I., 462 A.2d at 983; *State v. Medeiros,* 117 R.I. 33, 37, 360 A.2d 867, 870 (1976). It is axiomatic that the statement be "free from the elements of design, contrivance and self-service * * *." *In re Daniel,* R.I., 456 A.2d at 260. In the instant case, we find that all of the statements admitted were made by Mrs. Ainsworth while she was dominated by nervous excitement.

■ The statements made when Mrs. Ainsworth opened the door were effusive. She had been tied up in her own home. She had watched her assailants rifle through her belongings. Mrs. Ainsworth was initially too frightened to admit the police officer. Even after Officer Mansolillo was admitted, she grabbed his arms and screamed. A consideration of all the facts satisfies us that the trial judge was correct in his ruling that Mrs. Ainsworth "was still laboring under the stress of nervous excitement when [she] spoke." *State v. Creighton,* R.I., 462 A.2d at 983; *State v. Potter,* R.I., 423 A.2d 67, 68 (1980).

■ Mrs. Ainsworth's responses to Mansolillo's questions were also made under the stress of nervous excitement. Although the fact that a statement is made in response to an inquiry is a factor to be considered in evaluating its spontaneity, this fact alone "does not render the spontaneous-utterance doctrine inapplicable." *State v. Creighton,* R.I., 462 A.2d at 982; *State v. Elzie,* 351 So.2d 1174 (La.1977); *State v. Simmons,* 52 N.J. 538, 247 A.2d 313 (1968); annot., 80 A.L.R.3d 369 (1977). As with the element of the statements being contemporaneous with the startling event, each situation must be evaluated on a case-by-case basis. *State v. Benton,* R.I., 413 A.2d 104, 111

(1980). Mansolillo testified that throughout his conversation with Mrs. Ainsworth she was extremely upset. This situation is distinguishable from that presented in *State v. Jalette,* 119 R.I. 614, 382 A.2d 526 (1978). There, the statements under consideration were made in response to a police inquiry some twenty two hours after the startling event. *Id.* at 621, 382 A.2d at 530. Here the statements were made in response to an officer's questions at the scene of the crime less than five hours after the robbery. *See State v. Carraturo,* 112 R.I. at 184–85, 308 A.2d at 831. We believe that the assumption underlying the trial judge's decision was correct, that is, that the statements were not the "product of reflection and deliberation." *State v. Medeiros,* 117 R.I. at 38, 360 A.2d at 870; accord *State v. Souza,* R.I., 456 A.2d 775, 778 (1983) (stress of nervous excitement found to continue approximately seven hours after startling event).

We are mindful of our holding that "[t]he use of such terms as 'tears,' 'nervous,' or 'upset' are not to be the 'open sesame' to having a declarant's statement classified as a spontaneous utterance." *State v. Jalette,* 119 R.I. at 621, 382 A.2d at 530. However, the admissibility of purported spontaneous utterances is left to the "sound discretion of the trial justice." *State v. Creighton,* R.I., 462 A.2d at 982; *State v. Benton,* R.I., 413 A.2d 104, 111 (1980). This episode does not "[stretch] the spontaneous utterance exception far beyond its breaking point." *State v. Jalette,* 119 R.I. at 621, 382 A.2d at 530. Accordingly, there was not an abuse of discretion.

The defendant argues that the introduction of Mrs. Ainsworth's statements was a denial of her right to confront witnesses against her guaranteed by the Sixth Amendment of the United States Constitution. We do not agree. Here the declarant's statements were admitted under the excited-utterance exception to the hearsay rule. We have long recognized that this use of hearsay evidence does not abridge the accused's right to confront witnesses against her. In *State v. Nordstrom,* we quoted, with approval, *State v. Murphy,* 16 R.I. 528, 533, 17 A. 998, 999 (1889), in recognizing that "well-established exceptions to the hearsay rule do not come within the confrontation mandate." *State v. Nordstrom,* 104 R.I. at 728, 244 A.2d at 841. Today, again, we quote *Murphy* with approval:

> " 'The defendant further contends that the admission of this evidence violates his constitutional right to be confronted by his witnesses. But this is not so. The deceased is not the witness; nor are his statements, merely as statements, reproduced in evidence. What he said and did in natural consequences of the principal transaction becomes original evidence, concerning which the witnesses are produced.' " *Nordstrom,* 104 R.I. at 477–78, 244 A.2d at 841.

The Constitution guarantees defendant the right to confront witnesses, that is, Mansolillo, not victims. *Id.* at 478, 244 A.2d at 841.

This result is soundly rooted in the policy behind the spontaneous-utterance doctrine. Since the "guarantee of trustworthiness" of a spontaneous utterance lies in the fact that it is effusive in character, "the credibility of such statements is not dependent solely upon the veracity of the declarant." *In re Daniel,* R.I., 456 A.2d at 260. For this reason, we have never required a showing of unavailability of the declarant before admitting their spontaneous utterances. *E.g., Creighton* and *Souza,* both *supra; accord* Fed.R.Evid. § 803(2). The defendant had the right to confront those who come forward and offer testimony that they have heard the "instinctive outpouring," screams or contemporaneous utterances others have made about startling events. *State v. Creighton,* R.I., 462 A.2d at 983.

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.

BEVILACQUA, Chief Justice, concurring in part and dissenting in part.

Although I concur with the conclusion, I must respectfully dissent on the issue of what constitutes a spontaneous-utterance exception to the hearsay rule. The rationale adopted today effectively eradicates the element of spontaneity from the spontaneous-utterance exception.

After Mrs. Ainsworth's original exclamations to the officer, he conducted a twenty-minute "interview" with the victim. I find objectionable the admission of the contents of the twenty-minute interview. In affirming the admission, my colleagues lost sight of the purposes served by the hearsay rule and its exceptions.

It is generally agreed that the hearsay rule serves to protect against the admission of unreliable evidence. "The theory of the hearsay rule is that many of the possible sources of inaccuracy and untrustworthiness which may lie underneath the base untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination." 5 Wigmore, *Evidence* § 1420 at 251 (Chadbourn rev. ed. 1974). Cross-examination is but one method of assuring reliability; the hearsay rule contemplates that there may be substitutes for cross-examination which provide sufficient indicia of reliability for the out-of-court statement to permit it to come in as evidence at trial. *Id.; see also* Younger, *Confrontation And Hearsay: A Look Backward, A Peek Forward,* 1 Hofstra L.Rev. 32, 36 (1973).

"The rationale for the [spontaneous-utterance] exception lies in the special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication." *McCormick's, Handbook of the Law of Evidence,* § 297 at 704 (2nd ed. Cleary 1972). The exception has two basic predicates to admissibility: there must be a startling event to render the reflective thought process of the declarant inoperative and the statement must have been made both in response to the stress of the startling incident and

while the declarant was still under that stress. *State v. Nordstrom,* 104 R.I. 471, 476, 244 A.2d 837, 840 (1968). There is no requirement that the spontaneous utterance be strictly contemporaneous with the event. *Id.* at 475, 244 A.2d at 840; *e.g., State v. Creighton,* R.I., 462 A.2d 980, 983 (1983); *State v. Souza,* R.I., 456 A.2d 775, 778 (1983).

Although the startling event, the robbery, which prompted Mrs. Ainsworth's original remarks [1] to the officer occurred some three hours earlier, there can be little doubt that these statements fall within the excited-utterance exception. This woman was in her mid-seventies, had just been robbed, bound to a chair, and warned not to tell anyone about the incident. Indeed, Mrs. Ainsworth did not move until the officer came and forced open the door.

The aspect of concern is that it allows the contents of the entire twenty-minute interview to be admitted on the coattails of the original utterances. This admission is permitted on the basis that Mrs. Ainsworth was extremely upset throughout the interview. The court, in affirming the trial court's admission of this evidence, relies upon *State v. Creighton,* R.I., 462 A.2d 980, 982 (1983). I believe that this conclusion is incorrect and that the reliance upon *Creighton* is misplaced.

In *Creighton* the victim was a nine-year-old boy who had been sexually assaulted by his stepfather. The boy never discussed the incident until the officer questioned him. The utterance would not have occurred "but for" the officer's questions. *See id.,* 462 A.2d at 982; *see also State v. Nordstrom,* 104 R.I. 480, 485, 244 A.2d 842, 845 (1968) (utterances of child victim of sexual assault was "prompted" by harrowing incident and not parents' questioning). In the instant case, the victim made the original utterances without prompting; however, all the details came from the twenty-minute interview. *Creighton,* in turn, only address-

1. The officer testified that as soon as he entered the apartment, Mrs. Ainsworth cried out, "Kathy upstairs robbed me. They tied me up. They took my ring."

es the situation in which the original utterance is prompted by a question, not one in which a voluntary utterance is followed by a twenty-minute "interview" conducted by a police officer trying to ascertain the details of the incident.

Additionally, I do not believe that Mrs. Ainsworth's emotional state justifies the blanket admission of her entire conversation with the officer. "The use of such terms as 'tears,' 'nervous,' or 'upset' are not to be the 'open sesame' to having a declarant's statement classified as a spontaneous utterance." *State v. Jalette,* 119 R.I. 614, 621, 382 A.2d 526, 530 (1978). It is not the excited state of the declarant alone that is decisive, it is also the spontaneity of the utterance, thus suspending the declarant's deliberative powers, which renders the statement reliable and provides a substitute for cross examination. We have held that in determining whether a statement qualifies as an excited utterance, "the test to be applied is whether from the facts of a particular case the statements were spontaneous or impulsive or whether they were the product of reflection and deliberation." *State v. Nordstrom,* 104 R.I. at 476, 244 A.2d at 840. *Accord State v. Carraturo,* 112 R.I. 179, 185, 308 A.2d 828, 831 (1973).

The responses to questions given during a twenty-minute interview cannot be considered spontaneous utterances. We have previously described a spontaneous utterance as an "effusion," which is thus free from deliberation and reflection. *In re Daniel,* R.I., 456 A.2d 258, 260 (1983); *State v. Jalette,* 119 R.I. at 622–23, 382 A.2d at 531. An "interview" is designed to have one party obtain information from the other and necessarily involves the interviewee's powers of reflection. There can be nothing spontaneous about the answers to questions posed during the course of a twenty-minute interview. I believe that Mrs. Ainsworth's answers "were neither instinctive nor impulsive." *State v. Jalette,* 119 R.I. at 622, 382 A.2d at 531. Accordingly, there were no guarantees of reliability to substitute for the cross-examination of Mrs. Ainsworth, and thus these statements were admitted in violation of the hearsay rule.

Although I believe that it was error to admit these statements, in light of the evidence against the defendant, the error may be considered harmless. My concern lies with the precedent that today's case potentially sets for the future. The nervous excitement one experiences as a victim of crime may last an indefinite time. If we are to accept the rationale of the decision rendered today, at what point do we prohibit the admission of out-of-court statements? At some point the deliberative powers must come in to play, and a statement will become narration and not a spontaneous utterance. It is not merely fabrication with which this hearsay exception is concerned, it is also lack of memory or distortion of memory. Without the element of spontaneity, heightened emotional state alone cannot serve as a sufficient guarantee of reliability to substitute for cross-examination. *State v. Jalette,* 119 R.I. at 621, 382 A.2d at 530.