**STATE**

v.

**Walter A. PERRY, Jr.**

**No. 89–227–C.A.**

Supreme Court of Rhode Island.

May 11, 1990.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen., for plaintiff.

Susan B. Iannitelli, North Providence, for defendant.

OPINION

KELLEHER, Justice.

The defendant, Walter A. Perry, Jr., has been found guilty after a trial by a Superior Court jury of second-degree murder in violation of G.L.1956 (1981 Reenactment) § 11–23–1, in the death of Leah Perry. The defendant's appeal is directed to two evidentiary rulings made by the trial justice. A brief review of the facts that preceded the present appeal is necessary.[1]

**1.** This court, in *State v. Perry,* 508 A.2d 683  (R.I.1986), addressed an appeal from a Superior

On April 9, 1984, Leah Perry (Leah), a nineteen-month-old child, was brought to the South County Hospital Emergency Room by her mother, Tina Perry (Tina), and Tina's live-in boyfriend, Walter A. Perry, Jr. (Walter).[2] Leah was unconscious upon arrival, and after emergency personnel were able to restore a heartbeat, she was rushed to Rhode Island Hospital for immediate surgery. Unfortunately, the child died in surgery later that day.

However, while the surgery was being conducted, Robin Vargas (Vargas), a social-work coordinator with the Rhode Island Hospital child-abuse team, conducted an interview with Walter and Tina in the waiting area of the intensive-care unit. As Vargas began to testify at trial about this interview and subsequent conversations with Tina and Walter, the trial justice called a recess and heard arguments of counsel concerning Vargas's impending testimony. Following these arguments, the trial justice ruled that Tina's statements qualified as "excited utterances" and, therefore, were admissible as an exception to the hearsay rule. The trial justice specifically indicated that the statements in issue had "met the foundational requirements to permit the witness to testify as to what Tina Perry told her at that point where Tina Perry became so hysterical that she could not control herself," and Vargas was allowed to complete her testimony.

Vargas testified that during the initial interview, Walter did most of the talking. Vargas subsequently interviewed Tina out of Walter's presence. Vargas testified that as this interview began, Tina was very quiet and made no eye contact with her. Then as Vargas began to question her further concerning the circumstances in which the child was injured, Tina became hysterical and began to cry. Vargas testified that following this sudden change in Tina's demeanor, Tina stated to her that Walter would repeatedly take the child into the bathroom and close the door and Tina would hear banging and crying coming from the bathroom. Tina also told her that Walter would use a table leg to hit the child. Furthermore Tina stated to Vargas that on April 8, 1984, both she and the child were beaten by Walter.

■ Walter now argues on appeal that the trial justice erred in permitting Tina's statements to be admitted under the excited-utterance exception. He contends that the trial justice incorrectly applied the holding of this court in the case of *In re Daniel*, 456 A.2d 258 (R.I.1983), to the facts of the case before him. The state, however, argues that the trial justice reviewed all the pertinent case law concerning the "excited utterance" issue and applied the appropriate standard. We shall now address this issue.

Rule 803 of the Rhode Island Rules of Evidence[3] states, in pertinent part:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

This court has spoken concerning this exception on numerous occasions. We summarized many of our observations about the exception in the case of *In re Daniel.* Therein we stated:

"A statement that would otherwise be inadmissible hearsay may be admitted as

Court decision in which Perry's motion to suppress oral and videotaped statements had been granted. We determined that a competency examination should have been given prior to the trial justice's rendering a decision on the motion to suppress. *Id.* at 688. The present appeal is unrelated.

**2.** Tina and Walter are not related, nor is Walter the father of the child.

**3.** The Rhode Island Rules of Evidence became effective October 1, 1987. The incident giving rise to the case at bar occurred prior to that date. However, the spontaneous-utterance exception to the rule barring the use of hearsay evidence existed in this jurisdiction prior to the effective date of the current Rules of Evidence. *See State v. Nordstrom,* 104 R.I. 471, 244 A.2d 837 (1968).

a spontaneous utterance even though it was not actually made contemporaneously with the event. The declarant, however, must make the statement in response to the shocking or startling event while still laboring under the stress or excitement engendered by the experience. * * * A spontaneous utterance is really an effusion. Being spontaneous, it is free from the elements of design, contrivance, and self-service which at times color testimony given from the witness stand. Consequently, the credibility of such statements is not dependent solely upon the veracity of the declarant." 456 A.2d at 260.

Furthermore we indicated, "Admissibility of spontaneous utterances is addressed to the sound discretion of the trial justice. * * * Whether the statement was truly spontaneous or not will be decided after an evaluation of the circumstances that existed at the time it was made." *Id.* at 260–61. Also any decision made by a trial justice concerning the admission of excited utterances shall not be overturned unless clearly wrong. *State v. Crowhurst*, 470 A.2d 1138, 1145 (R.I.1984).

Our review of the record has not revealed any information that would lead us to the conclusion that the trial justice was clearly wrong in his decision. The record clearly indicates that the trial justice took note of the extensive case law on the issue and made his decision in light of this court's past comments concerning the exception.

The record also indicates that Tina made her comments to Vargas while her daughter, Leah, was undergoing emergency surgery. Although Tina was subdued and very quiet when she began speaking with Vargas, she became very agitated, frightened, and eventually hysterical when Vargas asked her questions about Walter and the injuries that Leah had sustained. She could not control her crying. She then proceeded to relate specific details concerning the physical abuse that she and Leah had suffered at the hands of Walter. Tina was laboring under the stress resulting from the knowledge that her daughter was gravely ill. This knowledge, combined with the fact that she herself had been physically abused, finally proved to be too much for her. It is this type of instinctive outpouring and effusion of emotion that we believe is encompassed by the excited-utterance exception. We therefore are unable to find any error in the trial justice's resolution of this first evidentiary matter [4] and shall now address the second issue raised on appeal.

■ During the course of the trial a videotape was shown to the jury. The tape contained footage of an interrogation of Walter conducted by two police officers at the South Kingstown police station. During the interrogation, Walter confessed to abusing Leah physically. It became apparent, however, that there was a fifteen-second period during which the video camera had been turned off. Defense counsel sought an explanation for this fifteen-second lapse.

The police officer who had actually filmed the confession testified that he had shut the camera off in order to put it back upon the tripod. He testified that he had originally removed the camera to get a close-up shot of the *Miranda*-rights form to which Walter had signed his name following his waiver of those rights. Had the camera been allowed to continue to run, the second officer indicated, it would have filmed the ceiling and floor as it was being readjusted to fit on the tripod. Unsatisfied with the explanation offered by the two police officers, defense counsel sought to perform a demonstration involving a video camera and tripod.

Defense counsel was allowed to bring the video equipment into the courtroom

---

4. We are also unpersuaded by Walter's argument that the trial justice incorrectly applied a more relaxed standard applicable only to statements of child victims. *See State v. Creighton*, 462 A.2d 980 (R.I.1983). This court stated in *Creighton* that "[s]trict contemporaneity is not required" for an excited utterance to be admissible. *Id.* at 982. We did not confine this observation so as to be applicable only to child victims of sexual offenses. We did comment, however, that in situations involving victims of tender years, an even less demanding time requirement is necessary. *Id. See also In re Ne-Kia S.*, 566 A.2d 392, 394 (R.I.1989).

during voir-dire examination of one of the police officers. The camera was the original one used during Walter's interrogation, but a newer tripod was used for the purpose of the demonstration. Defense counsel sought to show that a newly made videotape would not show any jerky or shaking movement when taken on and off the tripod. Following partial completion of the demonstration, the trial justice indicated that he would not allow the demonstration to take place in front of the jurors, nor would he allow the demonstration tape to be admitted into evidence. Later, after defense counsel again sought to have the demonstration tape admitted as a full exhibit, the trial justice stated:

> "I still believe that the demonstration, as you wished to present it, is not one that would be of value to this jury. I think [the officer] indicated on voir dire, so to speak, of the proposed demonstration, that [the tripod] was a substantially different piece of equipment that the camera was resting on. I also recall [the officer] saying something to the effect that since the tape has been made, not only were the legs of the tripod different, that his hands shook more than they may have before. I think you have been over it quite completely. * * * I think the demonstration is not helpful at all."

Walter now contends that this ruling by the trial justice served to curtail impermissibly his constitutionally protected right of cross-examination. He concludes this argument by asserting that the exclusion of this evidence was not harmless error.

Whether to allow an in-court demonstration is within the discretion of the trial justice. *State v. Wiley*, 567 A.2d 802, 804 (R.I.1989). After a review of the record, we are unable to reach the conclusion that the trial justice abused his discretion in the situation at bar.

In-court demonstrations are "held to the 'basic requirement of similarity of conditions which is applicable to experimental evidence generally.'" *Id.* (quoting *McCormick on Evidence*, § 215 at 677 (3d ed. Cleary 1984)). As the trial justice indicated, the tripod was different, and the police officer who had done the filming had aged, and his hands were not so steady as they once were. These factors effectively destroyed any possibility of creating conditions similar to those that existed during the original interrogation.[5]

Because we find that the trial justice did not err in his ruling pertaining to the demonstration and the videotape resulting therefrom, it is unnecessary to address Walter's contention that these actions of the trial justice amounted to harmful error.

For the aforementioned reasons we conclude that each of the two bases for the defendant's appeal are without merit. Accordingly the defendant's appeal is denied and dismissed, and the judgment of conviction affirmed.

5. The trial justice had originally believed that conditions in the courtroom were substantially similar to those at the police station. However, during the demonstration he concluded that "this is not an accurate recreation of events."