STATE

v.

James OISAMAIYE.

No. 98–303–C.A.

Supreme Court of Rhode Island.

Nov. 1, 1999.

Patricia A. Coyne–Fague, Aaron L. Weisman, Providence, for Plaintiff.

Robert D. Watt, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

This case came before the Court for oral argument on September 21, 1999, pursuant to an order entered March 16, 1999, directing the parties to appear and show cause why the issue raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issue raised by this appeal will be summarily decided.

The defendant, James Oisamaiye (defendant), was charged with one count of patient abuse, mistreatment, and neglect pursuant to G.L.1956 § 23–17.8–1. Prior to trial and after a hearing, the trial justice granted the defendant's oral motion to suppress out-of-court statements made by the now-deceased alleged victim, Jose Simao (Simao). The state appeals the order,

asserting that the statements constituted excited utterances and are admissible pursuant to Rule 803(2) of the Rhode Island Rules of Evidence.

The following facts were adduced at the pretrial hearing. On the morning of March 10, 1997, certified nursing assistant, Maria Pinto (Pinto), was on duty at the Edmund Place Nursing Home in East Providence. At approximately 7:30 a.m., Pinto was asked to report to room 232. Upon her arrival, Pinto observed Simao, the occupant of room 232, dressed in a johnny gown and sitting on the lavatory in the bathroom with blood on his mouth and fingers. Simao, who spoke only Portuguese, was extremely upset. Also present in the room were the defendant and a nurse. The nurse requested Pinto, who speaks Portuguese, to ask Simao what had happened. Pinto testified that Simao was too upset to respond at first, but following her attempts to calm him, he answered repeatedly, "It was him, it was him," while pointing to the defendant. Simao did not explain what he meant by this statement. Meanwhile, senior medication technician, Elizabeth Luis (Luis), whose primary language is Portuguese, arrived at the scene. Pinto subsequently left the room to attend to other duties.

Luis testified that Simao looked disheveled and had blood on his chin, lips, and fingers; that he was clearly upset; and that he was "[s]haking and just talking very loud, like nervous." In addition she testified that there were red marks on his wrists and that his elbow appeared to be injured. Luis asked Simao what had happened, to which he responded that "[t]he boy or young man did this to me" and that he kept repeating that "the young boy hit him," while pointing to the defendant. In response to the question "[H]ow did this happen?" Simao said, "I was attempting to get out of bed to go to the bathroom."

Sometime later, Luis asked Simao again to describe the incident so that she could interpret his answers for the director of nursing. Luis testified that Simao, who by now had calmed down, stated that "[b]ecause of the blood on his lips it must have been when he was pulling his wrist away from the boy, he might have hit his wrist against his lips."

The trial justice, after acknowledging that Simao had been upset and bleeding and after finding that the "statements were not effusive statements but came laboriously after being asked repeatedly to tell what happened," ruled the statements inadmissible. In addition she found that "the statements otherwise lack sufficient indicia of reliability and trustworthiness to be admissible * * * given the [later] contradictory statement Mr. Simao communicated."

■ "Among the well-established exceptions to the hearsay rule is the excited utterance exception." *State v. Krakue,* 726 A.2d 458, 462 (R.I.1999) (per curiam). "The guarantee of trustworthiness [for the excited-utterance exception] is assured as long as the declarant made the statement as an instinctive outpouring' or an effusion.'" *Id.* (quoting *State v. St. Jean,* 469 A.2d 736, 738 (R.I.1983)). "The utterance need not be strictly contemporaneous with the startling event to qualify as spontaneous," (*St. Jean,* 469 A.2d at 738), "so long as it was made while the declarant was still laboring under the stress of [the] * * * experience.'" *Krakue,* 726 A.2d at 462 (quoting *State v. Creighton,* 462 A.2d 980, 983 (R.I.1983)).

■ "Admissibility of spontaneous utterances is addressed to the sound discretion of the trial justice." *Krakue,* 726 A.2d at 462 (quoting *State v. Perry,* 574 A.2d 149, 151 (R.I.1990)). "[A]ny decision made by a trial justice concerning the admission of excited utterances shall not be overturned unless clearly wrong." *Id.*

In the instant case there is ample evidence on the record to support the fact that the statements were made in a state of nervous excitement and should have been admitted under the excited-utterance exception to the hearsay rule. Simao was

340

discovered bleeding, had noticeable red marks on his wrists, and had an apparent injury to his elbow. Although the exact time of the occurrence of what appeared to be recent injuries is unknown, the evidence shows that when the witnesses arrived, Simao was extremely upset, shaking, speaking loudly, and laboring under the stress of a startling event. Because he was incapable of being understood in this agitated state, the witnesses tried to calm Simao to the point where he could tell them what had happened. Still shaking and nervous, Simao implicated the defendant. The fact that Simao made what could be construed to be contradictory statements at a later time did not undermine the initial reliability and trustworthiness of his original statements.

Consequently, after a review of the record, we conclude that the trial justice was clearly wrong and erred in excluding Simao's initial excited responses as inadmissible hearsay. For the foregoing reasons the state's appeal is sustained, and the order of the Superior Court is vacated.