STATE

v.

**Kenneth Ray BURNS.**

No. 85–438–C.A.

Supreme Court of Rhode Island.

April 21, 1987.

James E. O'Neil, Atty. Gen., Mary Rogers, Thomas Dickinson, Asst. Attys. Gen., for plaintiff.

William F. Reilly, Public Defender, Paula Rosen, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

FAY, Chief Judge.

This appeal follows a verdict by a Superior Court jury that found the defendant, Kenneth Ray Burns (Burns), guilty of having committed second-degree sexual assault[1] against his stepdaughter, Ann,[2] in violation of G.L.1956 (1981 Reenactment) § 11–37–4, as amended by P.L.1981, ch. 119, § 1.

Second-degree sexual assault is defined in § 11–37–4 as follows:

"A person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person and if any of the following circumstances exist:

(A) The victim is thirteen (13) years of age or under.

(B) The accused knows or has reason to know that the victim is mentally incapacitated, mentally defective or physically helpless.

(C) The accused uses force or coercion.

(D) The accused engages in the medical treatment or examination of the victim for the purpose of sexual arousal, gratification or stimulation."

Sexual contact within that statute is defined in § 11–37–1 as

"Sexual contact—the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification or assault."

The defendant raises several exceptions on appeal. They are (1) that the trial justice committed reversible error when he ruled that the victim's mother could testify regarding hearsay statements made to her by the victim soon after an assault, under the spontaneous-utterance exception to the hearsay rule; (2) that the trial justice committed reversible error when he denied defendant's motion to pass and allowed the admission of evidence of a prior bad act of defendant when it did not fall under any exception to the general rule that evidence of prior bad acts or crimes is irrelevant and inadmissible; (3) that the state violated discovery procedures since the testimony concerning the prior bad act was not given to defendant prior to its use in trial; and (4) that the prosecutor's statement in closing argument concerning the same prior bad act was improper and prejudicial and there-

---

1. Although Burns was originally indicted on grounds of first-degree sexual assault, which requires a showing of penetration, the trial justice granted a motion for acquittal on that charge since there was an insufficient showing of penetration. The case was sent to the jury on the lesser included charge of second-degree sexual assault. *See State v. Malouin,* 433 A.2d 176 (R.I.1981).

2. Not her real name.

fore the trial justice's refusal to pass the case was reversible error.

In this case, the eleven-year-old victim, Ann, took the stand and testified about events that occurred some two years earlier, during the summer of 1983.[3] Her testimony principally concerned a sexual assault that occurred on August 26, 1983, a night on which her mother took her brother to the doctor and Ann was left at home with defendant. Ann testified that defendant asked her to go into the bedroom and take off her clothes. The defendant then came in and had her put on a slip. Ann then testified that defendant "French kissed" her, kissed and rubbed her breasts, and rubbed her vagina with his hand. She further testified that she did nothing to stop defendant as she was "too scared" of him because he had "hurt her."

When Mrs. Burns, Ann's mother, came home after the episode was over, she thought the pair looked "suspicious." She wondered why the child was already in her pajamas; yet when she asked her daughter, her daughter gave no reason.

The defendant left the house within minutes of Mrs. Burns's arrival. Her mother asked Ann again what was the matter, and this time, as the child began to speak, her eyes filled with tears and she hesitantly related the details of the assault.

It was at this point at trial during Mrs. Burns's testimony, as Mrs. Burns was about to testify as to what her daughter had said, that defendant entered a timely objection, which the trial justice overruled. Mrs. Burns was then allowed to testify about the principal assault; however, she also included testimony concerning events that occurred prior to the principal assault. It also appears from the record that Mrs. Burns was confused about when certain statements were made by Ann to her, whether on that same night or in subse-

quent discussions throughout the following week.

## I

The defendant argues here that the requisite foundation necessary for admission of hearsay under the spontaneous-utterance exception had not been established by the state. Specifically, defendant argues that the mother did not know when Ann made the statements, whether it was immediately following the assault or during the next few days after the assault. Second, defendant argues that the child's tears were merely due to the guilt and shame of having to recite the details of the assault, not due to the excitement of the assault itself. The defendant also argues that the witness was allowed to testify about statements made by the victim that did not relate to the circumstances of the exciting event that gave rise to the statements, but concerned past events. Last, defendant argues that because the statements were in response to questions asked by the mother, the spontaneous-utterance exception cannot apply.

In *State v. Jalette*, 119 R.I. 614, 620, 382 A.2d 526, 530 (1978), we stated that "[w]hile there is no explicit rule as to what constitutes an admissible spontaneous utterance, it is recognized that *each* statement must be considered within the context of the circumstances which prevailed at the time of its utterance."[4] (Emphasis added.) *See also State v. Poulin*, 415 A.2d 1307 (R.I.1980).

We also said in *State v. Crowhurst*, 470 A.2d 1138, 1145 (R.I.1984), that

"the trial justice, in considering the admission of alleged spontaneous utterances, must look at all the facts and circumstances before ruling whether or not the hearsay declarant was still laboring under the stress of the exciting event when he or she spoke. *State v. Creighton*,

---

**3.** The indictment returned by the grand jury concerned a sexual assault that occurred on day and dates between June 1, 1983 and August 31, 1983, the exact day and dates unknown.

**4.** *See State v. Vaccaro*, 111 R.I. 59, 62 n. 1, 298 A.2d 788, 790 n. 1 (1973) (Rhode Island jettisons

use of the ancient phrase "res gestae" in favor of more well-developed and clearly-defined exceptions to hearsay rule, including excited or spontaneous utterance, to make possible and preferable more precise analysis and terminology in decisions).

R.I., 462 A.2d 980 (1983). The essence of the excited-utterance exception is the inability of the declarant to have reflected on the events about which the statement is concerned. Consequently, the evidence must be judged in terms of spontaneity and an analysis of whether the declaration is the result of thoughtful consideration or the product of an exciting event. The decision about whether the utterance was the result of thoughtful consideration or was the product of an exciting event is a matter addressed to the sound discretion of the trial justice and, once made, will not be overturned unless clearly wrong."

■ Based upon our own independent review of the record, *see State v. Poulin,* 415 A.2d at 1311 n. 2; *State v. Jalette,* 119 R.I. at 621, 382 A.2d at 530, we cannot say that the trial justice was clearly wrong in admitting the testimony that dealt with the details of the August 26, 1983 incident under the spontaneous-utterance exception to the hearsay rule.

The record in the case at bar indicates that even though Mrs. Burns was admittedly confused about when some of Ann's statements were made to her, she stated unequivocally on cross-examination that she was sure that at least those statements that described the August 26, 1983 incident were made by Ann to her on that same night. With respect to these particular statements, the time-frame aspect of the spontaneous utterance exception was sufficiently established since further testimony also showed that these statements were made within minutes of Mrs. Burns's arrival home and within hours of the incident itself. *See State v. Creighton,* 462 A.2d 980, 982 (R.I.1983) (strict contemporaneity is not required "[g]enerally * * * a less demanding time requirement is necessary in sexual-offense cases, particularly when the victim is a child of tender years"). Mrs. Burns also testified that she thought that Ann looked "upset" and behaved "suspiciously." Ann testified that she was afraid of Mr. Burns. Further, she would not speak of the incident while her stepfather was still present. Her mother testified that after Mr. Burns had left the house, she again asked the child if anything had happened and that at that point the child began to speak and her eyes filled up with tears. Clearly there is ample evidence upon which the trial justice could base his evidentiary ruling.

■ The fact that a statement was made in response to an inquiry does not render the spontaneous-utterance doctrine inapplicable. *Creighton,* 462 A.2d at 982. It is merely a factor to be considered in evaluating the statement's spontaneity. *State v. St. Jean,* 469 A.2d 736, 738 (R.I.1983). Further, each situation must be evaluated on a case-by-case basis. *Id.* "[T]he crucial question is whether from a consideration of all the facts the trial justice is satisfied that the declarant was still laboring under the stress of nervous excitement when [s]he spoke." *State v. Benton,* 413 A.2d 104, 111 (R.I.1980). "It is axiomatic that the statement be 'free from the elements of design, contrivance and self-service * *.' " *St. Jean,* 469 A.2d at 738 (quoting *In re Daniel,* 456 A.2d 258, 260 (R.I.1983)).

Based upon the evidence of the child's demeanor and the facts and circumstances surrounding the statements—the child's fear of Mr. Burns, her hesitancy in speaking about the incident, her tender years, the short time between the incident and the arrival home of someone she could trust (*see State v. Nordstrom,* 104 R.I. 471, 477, 244 A.2d 837, 840 (1968)), and even the fact that her statements were in partial response to her mother's questions—we cannot say that the trial justice abused his discretion in finding that the statements were sufficiently trustworthy and not the product of deliberation and/or contrivance. The testimony of Mrs. Burns, which described the details of the August 26, 1983 assault, was properly admitted.

More problematic, however, is the admission of testimony that went beyond the description of the exciting event. In that testimony, the mother was allowed to testify about other sexual incidents that had occurred prior to the August 26, 1983 incident.

We have held that evidence of not-too-remote, similar sexual incidents between a particular defendant and the same victim may, in certain circumstances, be admissible to show the accused's lewd disposition or intent toward the victim. *See Jalette*, 119 R.I. at 624–28, 382 A.2d at 531–34. However, when that testimony is also hearsay, it must first be shown to be admissible subject to an exception to the hearsay rule. *See Poulin*, 415 A.2d at 1310–11. The record shows that the trial justice made only the initial determination that statements made by the child were made while the child labored under the stress of nervous excitement. No showing was made by the state that the latter statements described or related to the circumstances of the occurrences preceding it. *See* 6 Wigmore, *Evidence*, § 1750(c) at 222, § 1754 (II)(2) at 226 (Chadbourn rev. ed. 1976); *see also State v. Poulin*, 415 A.2d at 1310 (the party seeking to introduce hearsay evidence as a spontaneous utterance assumes the burden of establishing that evidence). Clearly, the evidence complained of by defendant concerned events that were distinct and separate from that of the August 26, 1983 incident and occurred at points in time prior to the August 26, 1983 incident.

It was, then, an error to have admitted evidence under the spontaneous-utterance rule where that evidence did not describe or relate to the circumstances of the occurrence that gave rise to it. *See* 6 Wigmore, *Evidence* § 1750(c) at 222, § 1754 (II)(2) at 226. However, as we said in *Poulin*, although it may have been error to have admitted hearsay evidence at trial, "reversal does not follow automatically. We must examine 'the record with a view to determining what in our judgment would have been the probable impact of the improper evidence on the minds of the average jury. Once that judgment is made, we will assume that the objectionable evidence had a similar impact on the jury' in this case." *Poulin*, 415 A.2d at 1311 (quoting *State v. Bower*, 109 R.I. 198, 201, 283 A.2d 39, 41 (1971)). "We consider admission of objectionable evidence harmless if we determine that it is not reasonably possible that such evidence would influence an average jury on the ultimate issue of guilt or innocence." *Poulin*, 415 A.2d at 1311. The improper testimony of Mrs. Burns added only some detail to sexual incidents to which the child herself had already testified and described. The child was also subjected to cross-examination concerning her testimony. We find, therefore, that the improper testimony was in most respects cumulative and that the few additional details admitted would not reasonably have influenced an average jury on the ultimate issue of guilt or innocence. Therefore, the admission of that testimony, although improper, was harmless error.

## II

With respect to the second series of exceptions raised by defendant concerning the improper admittance of evidence of a prior bad or illegal act of defendant, additional testimonial background is necessary.

Ann, while testifying, described another sexual incident that occurred in which defendant, while watching the Playboy channel on cable television, kissed and rubbed her body. Earlier, Ann had testified in detail about "French kissing," and when asked by the prosecutor how she knew such details and the name, she stated that Mr. Burns had told her. The defense counsel on cross-examination attempted to show that Ann had learned of these details by watching the Playboy channel and indeed attempted to draw the inference that she fabricated these incidents, based upon what she had seen and learned by watching the channel.

Later at trial, the prosecutor asked Mrs. Burns whether the family had cable television, and in response Mrs. Burns stated that they had had it but that it had been turned off, but Mr. Burns climbed the pole and turned it back on. Defense counsel immediately objected to the admission of this testimony of a prior bad act on the ground that it does not fall under any of the well-recognized exceptions stated in *State v. Colangelo*, 55 R.I. 170, 179 A. 147 (1935), and moved to pass the case. The

trial justice admitted the statement over defense counsel's objection, stating in part that it was simply part of an entire picture, relying on, it appears, the "complete story" principle, *see State v. Sepe*, 122 R.I. 560, 566, 410 A.2d 127, 130 (1980), or the "interwoven offense" exception under *Colangelo. See Colangelo*, 55 R.I. at 173–74, 179 A. at 149; *see also State v. Cardoza*, 465 A.2d 200 (R.I.1983). The trial justice denied defense counsel's motion to pass and noted his exception. No cautionary instruction was requested.

■ The state here strongly argues that defendant's failure to request a cautionary instruction is fatal to defendant's argument on appeal. *See State v. White*, 512 A.2d 1370, 1374 (R.I.1986); *State v. Anil*, 417 A.2d 1367 (R.I.1980). However, in *State v. Mancino*, 115 R.I. 54, 340 A.2d 128 (1975), "we noted * * * that ordinarily a failure to request a cautionary instruction at the time the remarks were objected to will preclude a defendant from raising a question in this court as to the prejudicial effect thereof. However, we recognized that there can be exceptions to the requirement that a request for such a cautionary instruction be made. For instance, where the trial justice, upon objection, concluded that the challenged remarks were proper, it obviously would be an idle gesture to require a defendant to request such a cautionary instruction." *Id.* at 60–61, 340 A.2d at 133 (referring to analysis in *State v. Mancini*, 108 R.I. 261, 274 A.2d 742 (1971)). It is evident that the trial justice concluded that the evidence was proper; thus, as we stated in *State v. Plante*, 111 R.I. 386, 391, 302 A.2d 804, 807 (1973), "this court would not hold an appellant to strict compliance with the procedural process if it were clear from the record that strict compliance with such procedure would be unavailing." We have earlier held that evidence of this type, "which in any way shows or tends to indicate that the accused has committed another crime independent of the crime for which he is being prosecuted, even though it was a crime of the same nature, is irrelevant and inadmissible." *State v. Colvin*, 425 A.2d 508, 511 (R.I.1981). However, well-recognized exceptions to this rule allow the admission of such testimony in situations in which it "is incidental to or connected with the offense under investigation in such a way that it tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like * * *." *State v. Colangelo*, 55 R.I. at 174, 179 A. at 149. The admission of such evidence depends upon the facts in each individual case. *Id.*

■ In the case at bar, no foundation was established for the admission of this evidence. The state was not specifically trying to introduce this evidence; it arose only when a witness volunteered the information beyond the scope of the question asked. No facts and circumstances surrounding the occurrence, other than the fact of the occurrence itself were presented by the state.

Thus, because no foundation had been established by the state for the introduction of this evidence under any of the recognized exceptions of *Colangelo*, the testimony should not have been admitted. *See State v. Engram*, 479 A.2d 716, 720 (R.I. 1984). Nor has any evidence been introduced that would show that this evidence is directly relevant on the issue of guilt of the crime with which defendant is charged. *See State v. Wilshire*, 509 A.2d 444, 453 (R.I.1986); *see also State v. Cline*, 122 R.I. 297, 330–31, 405 A.2d 1192, 1210 (1979).

■ Therefore, when evidence of a prior crime is improperly admitted, "we must examine the evidence with respect to the factual circumstances surrounding its admission, and its probable influence upon the ultimate outcome of the case." *State v. Roderick*, 121 R.I. 896, 900–01, 403 A.2d 1090, 1092 (1979). Generally, the inclusion of objectionable evidence "is harmless, if 'it is not reasonably possible that such evidence would influence an average jury on the ultimate issue of guilt or innocence.'" *State v. Bowden*, 439 A.2d 263, 269 (R.I. 1982). Although the improper admission of evidence of a prior bad act may, in some circumstances, cause such substantial prejudice to a defendant as to warrant reversal of his or her conviction, in the case at bar

the error in this admission is rendered harmless by the other overwhelming evidence establishing defendant's guilt. *See State v. Hughes*, 494 A.2d 85, 91 (R.I.1985). The ultimate issue before the jury in this case was whether defendant engaged in sexual contact with his stepdaughter between June 1, 1983 and August 31, 1983. The evidence adduced by the state through the complainant, her mother, as well as the expert medical testimony, provides that overwhelming evidence of defendant's guilt. The jury took less than twenty minutes for deliberation before it returned a guilty verdict. *Cf. State v. Pugliese*, 117 R.I. 21, 362 A.2d 124 (1976) (jury agonized with verdict for six hours, finally sent note to court stating, "[W]e have reached a verdict, God help us").

Based upon the abundance of evidence of defendant's guilt and the jury's relatively instantaneous certainty of defendant's guilt, we do not feel that the evidence of stealing the cable services was of such a magnitude as would have reasonably influenced an average jury on the ultimate issue of defendant's guilt or innocence. The error in admitting the evidence was harmless.

The defendant also argues that the trial justice should have granted defense counsel's motion to pass the case because the state failed to give defendant notice of the prior bad act via discovery. The record shows that although the defense counsel arguably objected to this testimony on discovery grounds,[5] neither the court nor the prosecutor understood it as such. The trial justice ruled only that the evidence was admissible as part of the entire picture. The record does not disclose any ruling or discussion on the grounds of a discovery violation, nor did defendant request a ruling on the discovery objection after the judge ruled on its admissibility as a prior bad act.

We stated in *Russian v. Lipet*, 103 R.I. 461, 465, 238 A.2d 369, 372 (1968), that "an

objection or motion not ruled on by a trial justice presents no question for review[,]" therefore we will not review this objection here.

Finally, defendant argues that the trial justice committed reversible error in denying defendant's objection and motion to pass in response to the prosecutor's closing argument in which the prosecutor referred to the prior bad act in an attack on defendant's credibility.

We need not address this contention since defendant's objection was untimely and defendant specifically requested that no cautionary instruction be given.

"We have made it perfectly clear that for a defendant to preserve a question of prejudicial error in closing argument for our review he must not only make an objection at the time, but must make a request for cautionary instructions." *State v. Pailin*, 114 R.I. 725, 728, 339 A.2d 253, 255 (1975).

Not only did defendant not object until after both the prosecutor's closing argument and the judge's giving of jury instructions, defendant requested that no cautionary instructions be given even though the trial justice agreed with defendant's objection that the remarks were improper and in fact offered to give the necessary instructions.

We outlined the manner in which an exception to allegedly improper prosecutorial remarks may be taken in *State v. Plante*, 111 R.I. 386, 302 A.2d 804 (1973). Because those procedures have not been followed here, the question of prejudicial error in closing argument is not preserved for our review.

Accordingly, the defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.

---

**5.** Defense counsel stated:

"We would have certainly asked the Court before this testimony, we haven't heard any indication of this before and I want to ask that the Court grant a mistrial on that basis and this is all the Court knows part of my

continuing objection to this whole pack of bad acts and references and coming in in regards to spontaneous utterances or a third party statement after the complaining witness has testified."