STATE

v.

Thomas MESSA.

No. 87–94–C.A.

Supreme Court of Rhode Island.

May 20, 1988.

James E. O'Neill, Atty. Gen., Thomas Dickinson, Caroline Cole Cornwell, Asst. Attys. Gen., for plaintiff.

Edward J. Romano, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case is before us on the defendant's appeal from a judgment of conviction entered in the Superior Court following a jury trial. We affirm. The facts insofar as pertinent to this appeal are as follows.

The defendant, Thomas Messa, was employed as a public school teacher in the city of Providence. Messa was charged with five separate counts of second-degree child-molestation sexual assault in violation of G.L. 1956 (1981 Reenactment) § 11–37–8.3, as enacted by P.L. 1984, ch. 59, § 2, and one count of second-degree sexual assault in violation of § 11–37–4, as amended by P.L. 1984, ch. 59, § 1. Each of the six victims was a pupil in Messa's class at the time of the alleged incidents.

Numerous witnesses were presented at trial, including the six victims, several parents, and schoolmates. Each of the victims testified to the effect that Messa would call him up to his desk at the front of the class, either sit him on his lap or have him stand adjacent to him, and then guide his hand to fondle Messa's penis. The six boys also testified that Messa sometimes put his hand inside the back of their pants and/or fondled their penises outside their clothing. The schoolmates testified regarding witnessing this behavior by Messa. The parents testified regarding behavioral changes in their children during the time that they were pupils in Messa's class.

On cross-examination defense counsel elicited testimony that most of the young victims either were friendly or were, in some instances, related to each other and, further, that some of the witnesses materially changed their testimony from that which was previously given to the Providence police or at a prior Providence School Committee hearing.

In addition, the state called Todd B., who testified that he had been subjected to a similar sexual assault by Messa approximately one year prior to the incidents for which Messa was then on trial. Todd further testified that he was not acquainted with any of the other witnesses and had not spoken to them regarding the substance of his testimony.

The jury returned guilty verdicts on all six counts. The trial justice denied Messa's motion for new trial. Thereafter, Messa was sentenced to five concurrent ten-year terms at the Adult Correctional Institutions, with six years to serve, and four years probation and one concurrent five-year term, suspended, with five years probation. Several issues are raised on appeal. Further facts will be supplied as necessary to a determination of the issues.

## I

WHETHER THE TRIAL JUSTICE ERRED IN ADMITTING EVIDENCE OF AN EXTRANEOUS SEXUAL ASSAULT

Messa argues that the testimony of Todd B. was so prejudicial and damaging that it should not have been admitted under any exception to the "other crimes" evidence rule recognized by this court in *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978). In *Jalette* we restated the general rule that "in prosecuting for a particular crime, evidence which in any way shows or tends to indicate that the accused has committed another crime completely independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible." *Id.* at 624, 382 A.2d at 531. There are, however, exceptions to this rule. The state may present evidence of other criminal activity by the accused if it is " 'substantially relevant for some other purpose than to show a probability that

he has committed the crime on trial because he is a man of criminal character.' " *Id.* at 624, 382 A.2d at 532. Among such recognized relevant exceptions is evidence that tends to establish material elements of the prosecution's case, such as the accused's intent, motive, plan, or participation in a felonious scheme like conspiracy. *Id.; accord State v. Bernier,* 491 A.2d 1000, 1004 (R.I. 1985). In such situations, the conceded possibility of prejudice is believed to be outweighed by the validity of the state's purpose in urging its introduction. We further acknowledged in *Jalette* that such evidence is to be received " 'with great caution' and is to be 'carefully restricted' by a specific instruction as to the limited purpose for which such evidence is being introduced." 119 R.I. at 625, 382 A.2d at 532.

A review of the record in the instant case reveals that the theory of defense was that the victims and their classmates had fabricated the evidence against Messa. Defense counsel conducted a vigorous cross-examination of the victims and the witnesses. Their memories were tested, both about the events themselves and about the testimony that they had given at a previous school board hearing, as well as about their friendships with one another. As a result some of the victims were confused by the sharp questioning and gave seemingly inconsistent answers. By these means defense counsel sought to produce the impression that the witnesses were collectively unreliable and had in fact colluded in planning their testimony. This implication was bolstered by defense counsel's closing argument in which it was suggested that the accusations against Messa "started as a joke, a lark, not realizing the seriousness of six major felonies, and they are trapped in this situation."

After the state presented the testimony of the six victims and the various other witnesses, the state filed a motion *in limine* to introduce the testimony of Todd B. The trial justice granted the motion and, relying upon the requirements enunciated in *State v. Jalette* in regard to "other crimes" evidence, stated:

"Despite the court's statement [in *Jalette*] that it should be sparingly used and only when reasonably necessary, I am satisfied the second criteria is fulfilled in this case and I am satisfied such evidence is reasonably necessary * * *.

"I am also conscious * * * that all or most of the complainants at least are friends and it can clearly be suggested to the jury that these accusations against Mr. Messa arise as a result of a juvenile conspiracy on the part of these youngsters to accord Mr. Messa harm, to subject him to a prosecution. As I understand [the] motion, this other witness would be one who is totally separate and apart and whose evidence would not be subject to a suggestion that he, too, contrived with these others to testify that he also had been subjected to a sexual assault by the defendant."

Additionally, the trial justice complied with defense counsel's request that the jury be given a preliminary limiting instruction about the purpose of Todd's testimony:

"I instruct you [that] this evidence is received for only a very limited purpose. The evidence is offered to the jury and it may be considered by the jury only as it tends to establish one or more of the material elements of the state's case, such as intent, plan, motive or scheme. This is the only purpose that the jury can make—this is the only purpose for which the jury can use this particular evidence."

Following the admonitions of the trial justice, Todd testified on direct examination that in the summer of 1983 he and his brother had gone to Messa's home to deliver papers. According to Todd, Messa invited the two boys into his home. Once inside, Messa allegedly put his arms around Todd, put Todd's hands behind Todd's back, and then rubbed his penis against Todd's hands. Todd testified that his brother was in the room but was unaware of the incident. Additionally Todd testified that he did not know any of the victims and had not discussed testimony with any of them. On cross-examination Todd testified that he waited two years before making a statement to the police, although on direct examination he stated that he told his mother about the incident on the day that it happened.

Messa now argues that in light of the state's numerous witnesses, Todd's testimony was not necessary to support a conviction. Messa asserts that by introducing Todd's testimony, the state was essentially attempting to show that Messa was acting in conformity with prior behavior at the time of the alleged assaults upon his students, and accordingly such testimony was not admissible under any exception to the "other crimes" evidence rule.

The record indicates that the trial justice carefully considered the potential prejudicial effect of Todd's testimony prior to ruling on its admissibility. The trial justice, mindful of the strictures enunciated in *Jalette*, determined that the evidence was, in fact, reasonably necessary for the state to sustain its burden of proof in light of the evolving defense theory of collusion. Additionally, the trial justice cautioned the prosecutor against going "into exhaustive detail with reference to the offense," and further, the trial justice gave yet another limiting instruction in his charge to the jury:

"Ladies and gentlemen, the evidence that was introduced by the state concerning an alleged sexual assault in the summer of 1983 in Coventry may only be considered by the jury as it relates to a showing of motive, design, system, scheme, plan or lewd disposition."

After an exhaustive review of the record, we conclude that evidence of prior sexual assault was relevant in light of the defense theory of collusion. We agree with the ruling by the trial justice that the admission of Todd B.'s testimony was reasonably necessary under the facts of the instant case. Accordingly, we find that the trial justice committed no error in admitting evidence of the prior sexual assault.

## II

WHETHER THE TRIAL JUSTICE ERRED IN ADMITTING TESTIMONY BY A MOTHER OF ONE OF THE VICTIMS REGARDING CHANGES IN HER SON'S BEHAVIOR

▮ Messa claims that the testimony given by the mother of David V. was dangerous and prejudicial and should have been excluded by the trial justice. Mrs. V. testified on direct examination in part:

"Q. Now, did you have an opportunity to observe your son's behavior at home before the middle of September of 1984?

"A. Before?

"Q. Yes.

"A. Yes.

"Q. Did you have an opportunity to observe your son's behavior in the middle of September 1984 up to—right before the middle of February 1985?

"A. Yes.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Now, [Mrs. V.], did you notice any change in his behavior between the first period you observed and the second period?

"A. Yes, I did.

"Mr. Sheehan: Objection.

"The Court: What's the objection?

"Mr. Sheehan: Causal connection. It could be a million things that caused the change, if there was a change.

"The Court: I will allow it.

"Q. And what changes did you notice.

"Mr. Sheehan: Objection. Continuing line, please, Your Honor.

"The Court: Yes, sir. Go ahead, [Mrs. V.].

"A. He was very nervous. He couldn't eat or sleep. He didn't want to go to school any more. He would follow me through the house, very closely through the house. He would want to sit on my lap and be comforted."

The testimony of Mrs. V. was introduced to demonstrate changes that occurred in David's behavior during a period that he was a student in Messa's class. As such, the evidence would seem to be probative of the demonstrative effect of Messa's actions upon one of his alleged victims. Questions of relevancy, in this jurisdiction, are addressed to the sound discretion of the trial justice, *State v. Champa*, 494 A.2d 102, 106

(R.I. 1985), and his or her determination regarding relevancy will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Ashness,* 461 A.2d 659, 674 (R.I. 1983). In the instant case Messa has failed to demonstrate any such abuse.

The defendant attempts to support his argument by noting that the mother of another of the victims was precluded from testifying regarding her son's falling grades during the school year in question. That witness, Mrs. L., was questioned about her son's grades during the time that he was a student in Messa's class. As the trial justice noted, the victim's falling grades could be attributed to any one of several reasons, and accordingly the trial justice declined to allow testimony regarding the falling grades. The defendant now suggests that the trial justice's rulings with regard to Mrs. V. and Mrs. L. were incompatible. However, it cannot be said that a mother's testimony regarding observable physical manifestations of emotional trauma on the part of her son is comparable to the testimony of another mother regarding her son's falling grades. Consequently it was not an abuse of discretion for the trial justice to allow the testimony of Mrs. V. while precluding the testimony of Mrs. L.

Messa also suggests that the evidence given by Mrs. V. should have been excluded on the ground that it was prejudicial. However, we have held that relevant evidence, even though prejudicial, is properly admissible in a criminal trial if the probative value outweighs any such prejudice. *State v. Reardon,* 101 R.I. 18, 24, 219 A.2d 767, 771 (1966). Such a determination is a matter directed in the first instance to the sound discretion of the trial justice. *State v. Bracero,* 434 A.2d 286, 292 (R.I. 1981). In the instant case it cannot be said that the evidence was improperly prejudicial, especially in light of the theory being advanced by Messa that the victims had colluded in bringing the charges against him. Moreover, defense counsel was able to elicit from Mrs. V., on cross-examination, evidence that David V. never complained about any problems at school and that he did, in fact, continue in regular attendance. Accordingly, we are of the opinion that the trial justice did not err in admitting the testimony of Mrs. V. regarding changes in her son's behavior.

## III

### WHETHER THE TRIAL JUSTICE IMPROPERLY RESTRICTED THE CROSS–EXAMINATION OF GEORGE S.

During the cross-examination of one of the victims, George S., defense counsel attempted to elicit testimony regarding a tape recording made by Messa of a telephone conversation. The tape included some disparaging remarks aimed at Messa, which Messa alleges were made by George S., his brother, and some other young men. The record indicates that when asked the question concerning whether he had ever called Messa's home and left a recorded message, George S. replied, "No." Counsel for defendant then attempted to pursue the theory that the voice of George S. was one of the voices recorded on the tape. At that point, defense counsel sought to introduce two tape recordings as an impeachment device. Defense counsel stated that Messa had identified a voice on the tape as that of George S.

Messa argues that the ruling by the trial justice precluding defense counsel from confronting the witness with one of the tapes effectively restricted defense counsel's cross-examination of the witness. This argument is without merit. As a condition precedent to allowing the tape to be used for impeachment purposes, competent evidence of the authenticity of the voice recognition should have been provided. As a preliminary question of fact, the trial justice would have been required to determine the authenticity of the tape prior to allowing its use. *See McCormick on Evidence* §§ 226–227 (3d ed. Cleary 1984). It is obvious that the mere assertion of counsel does not constitute competent evidence upon which a preliminary finding of fact may be based. *Cf. Wood v. Ford,* 525 A.2d 901 (R.I. 1987) (bald assertion of attorney

that client had filed earlier timely appeal was wholly incompetent and without probative value). Since such a finding could not be made, the relevance of the tape for impeachment purposes was not established.

In any event a close examination of the record reveals that defense counsel engaged in an extremely thorough cross-examination of this witness. Defense counsel elicited testimony that George S. had, on prior occasions, called Messa a "fag." This admission was exhaustively explored by defense counsel on cross-examination. Additionally, defense counsel was able to elicit discrepancies in the testimony George gave before a prior school board hearing as well as in statements he gave to the Providence police. It appears that Messa's right to confront this witness was fully protected by the extensive cross-examination that ensued. As we have previously stated, "the scope of cross-examination, once sufficient examination has been given in order to satisfy the right to confrontation, is within the sound discretion of the trial justice." *State v. Payano,* 528 A.2d 721, 729 (R.I. 1987).

We have reviewed the record of George S.'s cross-examination and find that the trial justice permitted an exhaustive cross-examination that disclosed numerous discrepancies in George's testimony as well as evidence that indicated bias by George toward Messa. Thus, even if there were any initial error in excluding the evidence, that error was "rendered harmless, therefore, by virtue of the full cross-examination ultimately permitted on this issue." *State v. Soto,* 477 A.2d 945, 948 (R.I. 1984). *See State v. Payano,* 528 A.2d at 730.

## IV

WHETHER THE TRIAL JUSTICE ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL

██ After the jury returned guilty verdicts on all six counts, Messa filed a motion for a new trial, alleging that the state's evidence was insufficient to prove guilt beyond a reasonable doubt. Stating that he considered all the evidence and assessed the credibility of all the witnesses, the trial justice denied the motion.

In passing upon a motion for new trial, a trial justice must determine whether the evidence adduced at trial was sufficient to support the jury's verdict of guilt beyond a reasonable doubt. *State v. Caruolo,* 524 A.2d 575, 585 (R.I. 1987). In making this determination, a trial justice must consider all the evidence in light of the charge given to the jury and then must independently appraise the weight of the evidence and the credibility of the witnesses. *Id.; State v. Caprio,* 477 A.2d 67, 73 (R.I. 1984). In this regard the trial justice essentially acts as a thirteenth juror. *Caruolo,* 524 A.2d at 585.

Upon review this court will not disturb the denial of a new-trial motion unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Caruolo,* 524 A.2d at 585; *State v. Tarvis,* 465 A.2d 164, 174 (R.I. 1983). In light of this standard of review, the trial justice should articulate the facts upon which he or she granted or denied the motion for a new trial. *Caruolo,* 524 A.2d at 585; *Tarvis,* 465 A.2d at 174.

In appealing the trial justice's denial of his new-trial motion, Messa argues that the trial justice was clearly wrong in his appraisal of both the weight of the evidence and the credibility of the witnesses. We are not persuaded by Messa's argument.

Our review of the record reveals that the trial justice carefully applied the standards for denying a motion for new trial. He thoroughly reviewed the testimony of each witness and specifically noted his belief that each of the witnesses was credible in spite of various inconsistencies in testimony that arose at trial. The trial justice found that the evidence presented against Messa supported the verdicts reached by the jury. Additionally he noted that "[t]he court would have returned the same verdict had it heard the case without the intervention of the jury." We do not believe that the trial justice misconceived any material evidence or was otherwise clearly wrong. Accordingly we hold that the trial justice's denial of the motion for a new trial was

correct in respect to all counts on which the jury found Messa guilty.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.