**In re CHRISTOPHER H. et al.**

**No. 96–234–Appeal.**

Supreme Court of Rhode Island.

June 3, 1997.

Frank P. Iacono, Jr., Anthony E. Angeli, Jr., John J. O'Brien, III, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

**PER CURIAM.**

This matter came before this Court pursuant to an order directing the respondent to appear and show cause why the issues raised

in this appeal should not be summarily decided. The respondent, Marina Harris (Harris), appeals from an order of the Family Court granting the petition of the Department of Children, Youth and Families (DCYF) to terminate Harris's parental rights to her minor children Christopher, Randy, Courtney, and Daquan. Upon review of the briefs of Harris, DCYF, and the children's guardian ad litem and after hearing oral arguments thereon, we conclude that cause has not been shown. The appeal is denied and dismissed, the order terminating parental rights is sustained, and the papers are remanded to the Family Court.

The Family Court order terminating Harris's parental rights was premised upon the then–applicable G.L.1956 § 15–7–7(1)(b)(iii) [1] that permitted termination for the reason that excessive use of drugs made Harris unfit to provide proper care for her children. The Family Court also terminated Harris's parental rights under § 15–7–7(1)(c) because the children had been in the care of DCYF for more than six months and it was improbable that Harris's conduct would change in the foreseeable future so that the family could be reunited. Harris now asserts that the order of the Family Court should be vacated because (1) DCYF did not make reasonable efforts to encourage and strengthen the parental relationship prior to the filing of its petition for termination of parental rights as required under § 15–7–7(2)(a), (2) the Family Court failed to properly consider the best interest of the children, (3) the Family Court improperly found that her drug use made her unfit to provide proper care for her children; and (4) the Family Court improperly admitted hearsay evidence during hearings in that court. We find no merit in any of those contentions.

DCYF's involvement with the Harris family is a long one. According to the findings made by the Family Court justice who presided over the trial below, it apparently began in 1991 after the birth of Harris's second child, Christopher, who was born drug positive. At that time, DCYF attempted to allow Harris to remain with her newly born child, Christopher, and her child Randy. The department, along with Harris, then created a plan to keep the family together, while providing for drug treatment for Harris in order for her to both learn effective parenting procedures and to remain drug free.

The evidence adduced at the trial hearings, however, clearly demonstrated that Harris was unwilling to meet the objectives proposed by the DCYF plan and to end her drug use. Because of her failure to keep appointments and her failure of drug tests over the next several years, Harris was discharged from various drug-treatment centers proposed by DCYF, including Talbot Detox, Talbot Women's Day, the Junction Program, and Project Link. In examining Harris's efforts to break her chronic addiction, the trial justice found that Harris "yo-yo'd from one program to another" and that she repeatedly rejected alternative programs devised to assist her as being "too hard" or "too long."

During the period in which DCYF was attempting to assist Harris with her self-destructive behavior, she gave birth to two additional children, Courtney and Daquan. Despite the arrival of those infant children into her family unit, Harris continued her drug abuse. Ultimately, by 1993 she admitted to the neglect of her children Courtney, Randy, Christopher, and Daquan because of her chronic drug abuse, and each child was then committed to the care and control of DCYF.[2]

The trial justice found that in 1993, DCYF referred Harris for a psychological evaluation with John Parsons, Ph.D. Dr. Parsons testified as a psychological expert at the trial and opined on the basis of his several personal evaluations of Harris, that she suffered from chronic, mild depression; that she had experienced one major episode of depression, and that her cognitive abilities were limited. He further testified that in light of Harris's drug dependency and depression, her children were at high risk. He questioned Harris's ability to effectively care for them. In response to Dr. Parsons's evaluation, DCYF

---

1. This case was tried under the law as it existed prior to the 1994 amendment.

2. A fifth child, Rhaneisha, was born April 7, 1995, but is not a subject in this appeal.

attempted to arrange for Harris to meet with a therapist. Harris, however, neglected to ever contact the therapist to arrange for any meeting.

On June 21, 1994, DCYF filed a petition for the involuntary termination of Harris's parental rights to Courtney, Randy, Christopher, and Daquan, pursuant to § 15–7–7(1)(b)(iii) and (1)(c). Relying upon the trial evidence previously noted and our decision *In re Antonio G.*, 657 A.2d 1052 (R.I.1995), the trial justice ordered termination of Harris's parental rights. Harris then filed this appeal.

■ In reviewing the ruling of the Family Court, we point out that the findings of a trial justice are accorded great weight and will not be disturbed unless the findings are clearly wrong or the trial justice has overlooked or misconceived material evidence. *In re Kristen B.*, 558 A.2d 200, 204 (R.I. 1989).

■ In this case we cannot say from our review of the trial record that the trial justice's findings made in favor of the parental–termination petition were clearly wrong. With respect to Harris's contention that DCYF did not fulfill its prepetition obligation to make reasonable efforts to reunite the family, the trial justice, in rejecting that contention, noted the numerous efforts on the part of DCYF case workers to arrange for drug–treatment programs that would allow Harris to remain with her children or that would provide babysitting for her in order to permit her to attend planned programs. Such efforts by DCYF spanned several years and encompassed numerous planned drug–treatment programs. In addition to those planned drug–treatment programs, DCYF attempted to also provide psychological counseling for Harris, but she effectively refused all offers of help. We are satisfied that DCYF more than met its obligation as required under *Kristen B.*

■ Nonetheless, Harris contends now that there was insufficient information presented at the hearings to prove by clear and convincing evidence that her drug abuse rendered her incapable of properly caring for her children. We do not agree. We are persuaded, as was the trial justice, by the expert testimony of Dr. Parsons who not only questioned the parenting abilities of Harris but also testified that Harris's drug abuse put her children at high risk. In addition, we are persuaded that the trial justice properly found that Harris "yo–yo'd" from treatment program to treatment program and that her efforts at reform were perennially marred by missed appointments and failed drug tests. Finally, the record disclosing that DCYF was initially put in contact with Harris because her child Christopher had been born drug positive and that Harris herself tested positive for drugs just two days prior to giving birth to another of her children, Daquan, cannot be ignored. Such egregious behavior would certainly serve to threaten the health and future well–being of respondents' children, and only convinces us that the trial justice's finding that Harris was an unfit parent because of her chronic drug use was correct and that her parental rights were properly terminated.

■ Harris's contention that the trial justice improperly considered hearsay evidence in determining whether her drug abuse made her an unfit parent is without merit. She points to the testimony of DCYF witness Muriel Palumbo, a social worker, who at one point during trial testified concerning conversations that a DCYF student intern had had with Harris regarding the drug–treatment program Project Connect. We respond to her contention by reiterating that the admission of hearsay evidence does not automatically require reversal. *State v. Burns*, 524 A.2d 564, 568 (R.I.1987). Rather, we examine the hearsay testimony to determine the probable impact that it may have had upon the factfinder. *Id.* In this case we are convinced that the effect of this challenged evidence would have been simply negligible in view of the abundant and clear testimony concerning Harris's chronic drug addiction. Thus, even assuming that the hearsay evidence was improperly admitted, its admission would amount to nothing more than harmless error in the context of the overall trial evidence.

■ We also reject Harris's contention that the termination of her parental rights was not in the best interest of the children. It is true that under § 15–7–7(3) the Family Court must "give primary consideration to the physical, psychological, mental, and intellectual needs of the child." It is also true that the evidence below suggested that some of Harris's children still have deep affection for her. However, in view of Harris's recalcitrant, self–centered attitude with respect to her chronic drug addiction and the expert testimony suggesting that the children in this appeal were at high risk, we are not persuaded by our review of the trial record that the trial justice either misconceived or overlooked any material evidence regarding the best interests of these children.

For the foregoing reasons, Harris's appeal is denied and dismissed, the parental termination order is affirmed, and the papers in this case are remanded to the Family Court.